UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAINT AGNES MEDICAL CENTER<br>1303 E. Herndon Avenue<br>Fresno, CA 93720<br>(559) 450-3000;<br><br>DAMERON MEDICAL CENTER<br>525 West Acacia Street<br>Stockton, CA 95203<br>(209) 944-5550;<br><br>MARIN GENERAL HOSPITAL<br>250 Bon Air Road<br>Greenbrae, CA 94904<br>(415) 925-7000;<br><br>MADERA COMMUNITY HOSPITAL<br>1250 East Almond Avenue<br>Madera, CA 93637<br>(559) 675-5555;<br><br>EMMANUAL MEDICAL CENTER<br>825 Delbon Avenue<br>Turlock, CA 95382<br>(559) 667-4200;<br><br>SALEM HOSPITAL<br>665 Winter Street, SE<br>Salem, OR 97301<br>(503) 561-5200<br><br>    Plaintiffs,<br><br>        v.<br><br>MICHAEL O. LEAVITT, Secretary<br>Department of Health and Human Services<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 1:06cv820<br>)             (PLF)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

1

FIRST AMENDED COMPLAINT

Plaintiffs Saint Agnes Medical Center, Dameron Medical Center, Marin General Hospital, Madera Community Hospital, Emmanuel Medical Center, and Salem Hospital ("Plaintiffs" or "Hospitals"), by and through their undersigned attorneys, bring this action against defendant Michael O. Leavitt, in his official capacity as Secretary of the United States Department of Health and Human Services, and states as follows:

A.   Jurisdiction and Venue

1.   This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §1395 et seq. (the "Medicare statute"), and the Administrative Procedure Act ("APA"), 5 U.S.C. §551 et seq.

2.   This Court has jurisdiction under 28 U.S.C. §1361.

3.   Venue lies in this judicial district under 28 U.S.C. §1391.

B.   Parties

4.   The following plaintiff hospitals were certified by the Medicare program as providers of inpatient services during the stated fiscal years relevant to this case:

   a.   Saint Agnes Medical Center, ("St. Agnes") Medicare provider 05-0093  FYEs May 31, 1990, August 31, 1991, August 31, 1992 and August 31, 1993;

2

  b. Dameron Medical Center ("Dameron") Medicare provider 05-0122, FYEs December 31, 1991, December 31, 1992, December 31, 1994 and December 31, 1996;

  c. Marin General Hospital ("Marin"), Medicare provider 05-0360, FYEs June 30, 1991, December 31, 1991 December 31, 1992 and December 31, 1993;

  d. Madera Community Hospital ("Madera"), Medicare provider 05-0360, FYEs June 30, 1994, June 30, 1995 and June 30, 1996;

  e. Emmanuel Medical Center ("Emmanuel"), Medicare provider 05-0179, FYEs January 31, 1991, January 31, 1992, January 31, 1993, January 31, 1994, January 31, 1995 and January 31, 1996; and

  f. Salem Hospital ("Salem"), Medicare provider 38-0051, FYEs September 30, 1992, September 30, 1993, September 30, 1994, September 30, 1995 and September 30, 1996.

 5. Michael O. Leavitt is the Secretary of the Department of Health and Human Services ("HHS"), the federal department which contains the Centers for Medicare & Medicaid Services ("CMS"), the agency within HHS that is responsible for the administration of the Medicare program. Before June 14, 2001, CMS was known as the Health Care Financing Administration (" HCFA"). In this complaint, Plaintiffs will refer to the agency as CMS or HCFA, as appropriate, depending on the context.

C. <u>General Background</u>

6. The Medicare statute establishes a system of health insurance for the aged, disabled, and individuals afflicted with end-stage renal disease. Pursuant to 42 U. S.C. §1395cc, Hospital entered into a written agreement with defendant to provide hospital services to eligible individuals.

7. Under 42 U.S.C. §1395x(v)(1)(A), providers of inpatient Hospital services, such as Hospital, are entitled to payment from Medicare for their "reasonable costs" incurred in providing services to Medicare patients, in accordance with regulations adopted by the Secretary. Reasonable cost is defined as the "cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies, and services." 42 U.S.C. §1395x(v)(1)(A).

8. In adopting regulations, the statute requires the Secretary to "take into account both direct and indirect costs of providers or services in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by [Medicare] w ill not be borne by individuals not so covered." *Id.* The Secretary has elected to publish many rules implementing the Medicare program in various manuals, such as the Provider

4

Reimbursement Manual.

9. Effective with cost reporting years beginning on or after October 1, 1983, Congress adopted a prospective payment system ("PPS") to reimburse hospitals, such as Plaintiffs, for inpatient hospital operating costs. *See* 42 U. S.C. §1395ww(d). Effective with cost reporting years beginning on or after October 1 1991, a complementary PPS process was implemented to reimburse hospitals, such as Plaintiffs, for inpatient hospital capital-related costs. *See* 42 U.S.C. §1395ww(g).

10. Payment to providers of services is commonly carried out by Medicare fiscal intermediaries, acting as agents of the Secretary pursuant to contracts with him. An intermediary is assigned to each hospital, such as Hospital, that participates in Medicare. Fiscal intermediaries make periodic interim payments to providers, subject to subsequent adjustments for overpayments or underpayments. 42 U.S.C. §1395h.

11. At the close of its fiscal year ("FY"), a hospital must submit a "cost report" showing both the cost incurred by it during the fiscal year and the appropriate portion of those costs to be allocated to Medicare. 42 C.F.R. §§ 413.24 and 413.50 The hospital must submit its cost report in compliance with law. The hospital's intermediary is required to analyze and audit the cost report and issue a Notice of Program Reimbursement ("NPR"), which informs the hospital of the final determination of its Medicare reimbursement for the cost reporting period

in compliance with law.

12. If a hospital is dissatisfied with its intermediary's final determination of total Medicare program reimbursement for a cost reporting period, as reflected in the NPR, it may seek to have the NPR corrected or altered in one of two ways:

a. The hospital has a right to obtain a hearing before the Provider Reimbursement Review Board (" Board" or "PRRB") by filing an appeal with the Board within 180 days of receiving its NPR. *See* 42 U.S.C. §1395oo.

b. The hospital may request reopening of an intermediary's determination within three years of the date of notice to the hospital of the intermediary's determination. 42 C.F.R. §405.1885(a).

13. Regardless whether a hospital files for a PRRB hearing or seeks reopening, regulations adopted by the Secretary require an intermediary's determination to be reopened within three years of the date of notice of it to the hospital if CMS notifies the intermediary that the determination is in any way "inconsistent with the applicable laws, regulations, or general instructions" issued by CMS. 42 C.F.R. §405.1885(b).

D. Procedure for Administrative and Judicial Review of PRRB Decisions

14. In addition to having the authority to make substantive decisions concerning Medicare reimbursement appeals, under 42 C.F.R. §405.1873 the Board is authorized to decide questions relating to its jurisdiction. The decision of

the Board on substantive or jurisdictional issues constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the Board's decision. 42 U.S.C. §13950o(f)(1); 42 C.F.R. §§4O5.1875 and 405.1877. The Secretary has delegated his authority under the statute to review PRRB decisions to the CMS Administrator.

15.     A hospital may obtain judicial review of a final administrative decision, including a decision relating to the jurisdiction of the Board, by filing suit within 60 days of receipt in the United States District Court for the judicial district in which the hospital is located or in the United States District Court for the District of Columbia.  42 U.S.C. §13950o(f).

16.     The Supreme Court has held that a decision denying a provider's request for reopening under 42 C.F.R. §1885(a) is not subject to judicial review. *Your Home Visiting Nurse Services, Inc. v. Shalala,* 525 U.S. 449 (1999). However, the Supreme Court did not preclude challenges to the process and standards used when rendering a reopening decision. *Compare, e.g., Universal Health Servs. of McAllen, Inc. v. Sullivan,* 770 F. Supp. 704,712 (D.D.C. 1991), *aff'd mem.,* 978 F.2d 745 (D.C. Cir. 1992). Accordingly, where, as here, a reopening request is denied as a result of the application of an unlawful process, the process is subject to judicial review.

7

E.     Medicare's Policies Regarding Payment for the Disproportionate

       Share Hospital Adjustment

17.    Under PPS, Medicare's payments to hospitals for inpatient operating costs are based on predetermined, nationally-applicable rates, subject to certain payment adjustments. 42 U.S.C. §1395ww (d); 42 C.F.R. Part 412. One of these adjustments, known as the disproportionate share hospital or "DSH" adjustment, is available to PPS hospitals that qualify if they serve a disproportionate share of low-income patients. *See* 42 U.S.C. §1395ww(d)(5)(F).

18.    Under 42 U.S.C. §1395ww(d)(5)(F)(vi), the Secretary is required to make an add-on payment for operating costs for PPS hospitals serving a "significantly disproportionate number of low-income patients," which is computed for a given cost-reporting period based on the sum of two fractions. For one of these fractions, known as the" Medicaid Low Income Proxy," it is necessary to determine the number of inpatient days on which patients who "were *eligible* for medical assistance [i.e., Medicaid]" received services at the hospital. 42 U.S.C. §1395ww (d)(5)(F)(vi)(II) (emphasis added). In general, the more Medicaid inpatient days that a hospital has, the larger its Medicare DSH adjustment will be.

19.    A final rule adopted by the Secretary in 1986 established the government's policy for the methodology to be used to count a PPS hospital's Medicaid inpatient days for purposes of determining the DSH adjustment.

8

*See* 51 Fed. Reg. 16,772 (1986), as codified at 42 C.F.R. §412.106.   This rule limited the number of Medicaid inpatient days to be used to compute the DSH adjustment by allowing hospitals to include only the days:

> for which benefits are payable under [Medicaid]. Any day of a Medicaid patient's hospital stay that is not payable by the Medicaid program will not be counted as a Medicaid patient day since the patient is not considered eligible for Medicaid coverage on those days.

This final rule impermissibly limited the effect of the DSH statute by allowing hospitals to include only "paid" Medicaid inpatient days, and not all "eligible" Medicaid inpatient days, when computing the DSH adjustment. This is known as the Secretary's "paid days" policy.

    20.     The United States Courts of Appeals for the Fourth, Sixth, Eighth, and Ninth Circuits invalidated the "paid days" policy. See *Jewish Hosp., Inc. v. Secretary* of *Health and Human Services,* 19 F.3d 270 (6th Cir. 1994); *Deaconess Health Serv. Corp.* v. *Shalala,* 83 F.3d 1041 (8th Cir. 1996); *Legacy Emanuel Hosp. and Health Ctr. v. Shalala,* 97 F.3d 1261 (9th Cir. (1996); *Cabell Huntington Hosp. v. Shalala,* 101 F.3d 984 (4th Cir.1996). Each of these courts held that the final rule limiting the number of Medicaid inpatient days to those for which payment was made by Medicaid was inconsistent with the Medicare statute

on which it was based. No United States Court of Appeals has upheld the validity of the DSH "paid days" rule.

21.   As a result of these four judicial decisions, the HCFA Administrator formally changed the government's policy in a HCFA Ruling ("HCFAR") published in accordance with 42 C.F.R. §401.108. This Ruling, HCFAR 97-2, was dated February 27, 1997 and provides that, for purposes of the "Medicaid Low Income Proxy," all Inpatient hospital days when services were provided to patients *eligible* for Medicaid would be counted, regardless whether the hospital actually received payment from Medicaid for the services rendered on those days. This is known as the Secretary's "eligible days" policy.

22.   By its terms, HCFAR 97-2 is binding on "all HCFA components, Medicare contractors, the Provider Reimbursement Review Board, the Medicare Geographic Classification Review Board, the Departmental Appeals Board, and administrative law judges who hear Medicare appeals."

23.   The Secretary conceded in HCFAR 97-2 that his "paid days" policy was "contrary to the applicable law in four judicial circuits" and acquiesced in those decisions on a national basis.

24.   HCFAR 97-2 also explicitly provides that (1) it is effective for "all cost-reporting periods beginning on or after February 27, 1997" and (2) that all eligible days "may be included" for "cost reports that are settled by fiscal

intermediaries on or after" February 27,1997. However, the Secretary limited the applicability of HCFAR 97-2 to earlier cost years stating that it would only apply to "hospital cost reports which have been settled prior to the effective date of this ruling, but for which the hospital has a jurisdictionally proper appeal pending on this issue."

25. HCFAR 97-2 also explicitly states that HCFA will not reopen "settled cost reports based on [the DSH] issue." This provision, known as the "reopening prohibition," was invalidated by the United States Court of Appeals for the District of Columbia Circuit in *Monmouth Medical Center v. Thompson,* 257 F.3d 807 (D.C. Cir. 2001) *("Monmouth")*. The Court invalidated the "reopening prohibition" because it found that, by issuing HCFAR 97-2, the Secretary conceded that DSH payments made under his "paid days" policy were contrary to law. Therefore, the Court held that the "reopening prohibition" was invalid because it conflicted with §405.1885(b), which requires reopening of payment determinations that are "inconsistent with the applicable laws, regulations, or general instructions." *Monmouth,* 257 F.3d at 814-815. Accordingly, the Court found that the Secretary was required under 42 C.F.R. §405.1885(b) to reopen the cost reports at issue in that case to correct the DSH payment and that each of the hospitals in that case was entitled to a writ of mandamus requiring the Secretary to order his intermediaries to do so. The

11

*Monmouth* decision is now final and no longer subject to further judicial review.

26.     Based on the authority of *Your Home,* the PRRB has declined to assert jurisdiction over the appeal of a hospital to the PRRB regarding the refusal of the fiscal intermediary to reopen the hospital's cost report in light of the *Monmouth* decision.

F.      Facts Applicable to Plaintiffs

27.     None of the NPRs for the Plaintiff Hospitals' FYEs noted in paragraph 3 above included the correct number of Medicaid eligible days in the DHS calculation. The DSH payment determinations made for these Plaintiff Hospitals were in accordance with the Secretary's then-current (and now invalid) policy of using paid, rather than eligible, inpatient Medicaid days when computing DSH payments.

28.     If the DSH payment determinations were made using all Medicaid eligible days (paid and unpaid), Plaintiff Hospitals would expect to qualify for greater DSH payments.

29.     Although some of Plaintiff Hospitals' NPRs were issued after HCFAR 97-2 became effective, the intermediaries were still required to compute Plaintiff Hospitals' DSH payments using all of Plaintiff Hospitals' Medicaid eligible inpatient Medicaid days. HCFAR 97-2. If these DSH payments had been determined using all of Plaintiff Hospitals' Medicaid eligible days, Plaintiff

Hospitals would expect their DSH payments to increase substantially.

## THE BASES FOR RELIEF

30. Under the decision of the Court of Appeals in <u>Monmouth</u> and in light of HCFAR 97-2, an intermediary must reopen and correct Plaintiffs' NPRs for the fiscal years noted in paragraph 3 above because either: a) the NPRs were issued within three years before HCFAR 97-2 was issued, or b) because HCFAR 97-2 requires the intermediaries to use all of Plaintiffs' eligible inpatient Medicaid days when calculating Plaintiffs' DSH payments.

31. This Court has jurisdiction under 28 U.S.C. §1361 and Plaintiffs are entitled to a writ of mandamus because the intermediaries have not reopened the corrected the DSH payment determinations in accordance with <u>Monmouth</u> and HCFAR 97-2. As set forth in <u>Monmouth</u>, the Secretary and intermediaries had a mandatory, non-discretionary duty to reopen to correct the DSH Medicaid Percentage once HCFAR 97-2 was issued. Further, any request for reopening fiscal years audited prior to HCFAR 97-2 would have been futile given that HCFAR 97-2 expressly (and invalidly) prohibited, any such reopening to correct the DSH Medicaid Percentage.

32. For the Hospitals' cost reports for the affected fiscal years, the DSH payment determinations were made in accordance with the Secretary's subsequently-invalidated policy of using "paid," rather than "eligible," inpatient

13

Medicaid days when computing DSH payments. Accordingly, the intermediaries understated the DSH payments for the affected fiscal years. Plaintiffs' cost reports for the affected years must be reopened to have the DSH payments recomputed in accordance with the methodology set forth in HCFAR 97-2.

33. This Court has jurisdiction to hear this case under 28 U.S.C. §1361 because Plaintiffs are entitled to a writ of mandamus on account of the intermediary's failure to grant the Hospitals reopening requests to correct the number of "eligible days."

34. This Court also has jurisdiction to hear this case under 28 U.S.C. §1331. Where a Hospital is challenging administrative action by the Secretary for which jurisdiction is not provided under the Social Security Act, the Supreme Court has held that jurisdiction for such review is available under 28 U.S.C. §1331 because of "the strong presumption that Congress intends judicial review of administrative action." *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 670 (1986).

## COUNT I

35. Hospitals hereby incorporate by reference paragraphs 1 - 34 herein.

36. Hospitals are entitled to issuance of a writ of mandamus under the *Monmouth* decision and the intermediary's mandatory reopening policy because:

   a. Hospitals have exhausted all administrative remedies and done all

they can to vindicate their right to reopening in their efforts to obtain proper Medicare payments for the affected fiscal years under the Secretary's "eligible days" policy;

    b.    HCFAR 97-2 gave notice to the Secretary's contractors, including the fiscal intermediaries for Plaintiffs, that the DSH payment determinations made under his" paid days" policy were" inconsistent with applicable law;" and

    c.    Under 42 C.F.R. §405.1885(b) and the *Monmouth* decision, the intermediaries have a non-discretionary duty to reopen the affected fiscal years' cost reports to correct the improper Medicare DSH payment determination that were made under the Secretary's unlawful "paid days" policy.

G.    <u>Requested Relief</u>

WHEREFORE, Plaintiffs request:

1.    The issuance of a writ of mandamus requiring the Secretary to order each Plaintiff's intermediary or its successor in interest, to reopen the Hospitals' Medicare cost reports for the affected fiscal years' and recalculate the Hospitals' Medicare DSH payment determinations for those fiscal years using the Secretary's "eligible days" policy in accordance with HCFAR 97-2;

2.    legal fees and costs of suit incurred by Hospitals; and

3.    such other relief as the Court may deem just and proper.

                Respectfully submitted,

                                                                    _____
Erling Hansen (D.C. Bar No. 192708)
Law Office of Erling Hansen, Esq.
1025 Connecticut Avenue, NW
Suite 1000
Washington, DC 20036
(202) 554-5716
(202) 554-5761 (facsimile)
erlinghansen@verizon.net


_____
Thomas J. Weiss (CA SBN 63167)
Law Offices of Thomas J. Weiss
1901 Avenue of the Stars, Suite 1501
Los Angeles, CA  90067
(310) 788-0710
(310) 788-0735 (facsimile)
tweiss@weisslawla.com

COUNSEL FOR PLAINTIFFS
SAINT AGNES MEDICAL CENTER;
DAMERON MEDICAL CENTER;
MARIN GENERAL HOSPITAL;
MADERA COMMUNITY HOSPITAL;
EMMANUAL MEDICAL CENTER;
SALEM HOSPITAL

Date:   May 10, 2006.