UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
ST. AGNES MEDICAL CENTER,                 )
                                          )
            Plaintiff,                    )
                                          )
      v.                                  )      Civil Action No. 06-0820 (PLF)
                                          )
KATHLEEN SEBELIUS,                        )
  Secretary, United States Department of  )
  Health and Human Services,              )
                                          )
            Defendant.[1]                 )
_____)


<u>OPINION</u>

        Plaintiff hospital brings suit for relief in the nature of mandamus, asking the Court

to compel defendant, the Secretary of Health and Human Services, through the Centers for

Medicare and Medicaid Services ("CMS") to reopen a final payment decision issued by the

Secretary's payment agent and to recalculate the Secretary's reimbursement of plaintiff for

services it rendered to indigent clients.[2]  This matter currently is before the Court on defendant's

motion to dismiss.  After careful consideration of the parties' papers and the entire record in the

case, the Court will grant defendant's motion to dismiss.[3]

_____

        [1]     The Court has substituted Kathleen Sebelius, the new Secretary of the Department
of Health and Human Services, as the defendant in place of former Secretary Michael O. Leavitt,
pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

        [2]     CMS is the component of the Department of Health and Human Services that is
responsible for administering the Medicare program.  It was formerly known as the Health Care
Financing Administration ("HCFA").

        [3]     The following documents are before the Court in connection with this motion:
Plaintiff's Second Amended Complaint ("Compl."); Defendant's Motion to Dismiss Plaintiff's

I.  BACKGROUND

This case relates directly to an issue that has been litigated before this Court and resolved by the United States Court of Appeals for the District of Columbia Circuit in <u>Monmouth Med. Ctr. v. Thompson</u>, 257 F. 3d 807 (D.C. Cir. 2001), and <u>In re Medicare Reimbursement Litig.</u>, 414 F.3d 7 (D.C. Cir. 2005), <u>cert</u>. <u>denied</u>, 547 U.S. 1054 (2006).  In fact, this matter was originally consolidated with the other civil actions that comprised <u>In re Medicare Reimbursement Litigation</u>.  <u>See</u> <u>In re Medicare Reimbursement Litigation</u>, Misc. No. 03-0090, Order (D.D.C. March 13, 2006).  The issues in <u>In re Medicare Reimbursement Litigation</u> were litigated before this Court and the court of appeals.  The court of appeals' ruling, described below, resulted in resolution of many of the individual cases.  It did not, however, resolve this matter.  On September 15, 2008, plaintiff filed a second amended complaint.  The history of the litigation in <u>Monmouth</u> and <u>In re Medicare Reimbursement Litigation</u> is described, in brief, below.

The Medicare Act, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 <u>et</u> <u>seq.</u>, creates a federally funded health insurance program for the elderly and disabled.  Part A of the Medicare Act reimburses hospitals for the operating costs of certain inpatient services.  <u>See</u> 42 U.S.C. § 1395ww.  In order to obtain this reimbursement, eligible hospitals file cost reports with their "fiscal intermediaries," <u>see</u> 42 C.F.R. § 413.20, usually insurance companies serving as the Secretary's agents for the purpose of reimbursing health care providers.  <u>See</u> 42 C.F.R. § 421.3; <u>In re Medicare Reimbursement Litigation</u>, 414 F.3d at 8.  The intermediaries audit the hospitals' cost reports and then issue Notice of Program Reimbursements ("NPRs") in which

---

Second Amended Complaint; Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss ("Opp."); and Defendant's Reply Memorandum in Further Support of Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint.

they determine the amount owed by the Secretary to the hospitals for the fiscal year at issue.  See

42 C.F.R. § 405.1803(a).  Hospitals may appeal the NPR to the Provider Reimbursement Review

Board (the "PRRB") within 180 days.  See 42 U.S.C. § 1395oo(a).  The PRRB may reverse,

affirm or modify the intermediary's decision; subsequently, the Secretary may similarly reverse

affirm or modify the PRRB's decision.  See 42 U.S.C. §§ 1395oo(d), (f)(1).  Hospitals still

dissatisfied with the final decision may seek judicial review by filing suit in the appropriate

United States District Court.  See 42 U.S.C .§ 1395oo(f); In re Medicare Reimbursement Litig.,

414 F.3d at 8.

       Reimbursement to hospitals varies based on hospital-specific factors, see 42

U.S.C. § 1395ww(d)(5); those hospitals that serve a "significantly disproportionate number of

low-income patients" receive increased reimbursements known as "disproportionate share"

("DSH") adjustments.  42 U.S.C. § 1395ww(d)(5)(F)(i)(I).  Congress enacted legislation that

established detailed criteria for determining hospital eligibility and the extent of any DSH

adjustment.  See 42 U.S.C. § 1395ww(d)(5)(F); In re Medicare Reimbursement Litig., 414 F.3d

at 9.  The HCFA promulgated interpretive regulations to implement these provisions —

regulations that four circuits subsequently found to be inconsistent with the Medicare Act

because they improperly restricted DSH eligibility and reduced payments to eligible hospitals.

See Cabell Hunting Hosp. Inc. v. Shalala, 101 F.3d 984 (4th Cir. 1996); Legacy Emanuel Hosp.

& Health Ctr. v. Shalala, 97 F.3d 1261 (9th Cir. 1996); Deaconess Health Servs. Corp. v.

Shalala, 83 F.3d 1041 (8th Cir. 1996) (per curiam); Jewish Hosp., Inc. v. Sec'y of Health and

Human Servs., 19 F.3d 270 (6th Cir. 1994).

In light of these decisions, the Administrator of HCFA issued a ruling that rescinded the challenged regulation nationwide, announcing a new interpretation more favorable to hospitals.  See Health Care Financing Administration Ruling 97-2 (February 27, 1997) ("HCFAR 97-2"); see also In re Medicare Reimbursement Litigation, 414 F.3d at 9.  In Monmouth Med. Ctr. v. Thompson, 257 F. 3d at 813-15, the court of appeals addressed the reach of HCFAR 97-2 in conjunction with 42 C.F.R. § 405.1885(b) (1997), which required an NPR to be reopened and revised if, within three years, the HCFA provided notice to the intermediary that the decision was "inconsistent with the applicable law."  Id. at 813.  The court held that because HCFAR 97-2 constitutes "notice" under 42 C.F.R. § 405.1885(b) (1997), that regulation imposed a clear duty on intermediaries, enforceable through mandamus, to reopen NPRs issued for the three years prior to the Secretary's issuance of HCFAR 97-2.  Id. at 814.  The court found that even though HCFAR 97-2 stated that it only had prospective effect, the mandatory language of 42 C.F.R. § 405.1885(b) (1997) created a nondiscretionary duty to reopen NPRs decided under the rescinded regulation within the three years prior to its issuance.  Id. at 813-15.  The court of appeals subsequently ruled in In re Medicare Reimbursement Litig., 414 F.3d at 11, that this duty to reopen applied to NPRs issued in the three years prior to the issuance of HCFAR 97-2, even if the hospitals had not previously applied for reopening, because it would have been futile for the hospitals to have timely sought reopening in view of the Secretary's original ruling that HCFAR 97-2 only applied prospectively.

Plaintiff seeks a writ of mandamus ordering the Secretary to compel the intermediary to reopen and recalculate plaintiff's DSH payment determination for the Fiscal Year Ending May 31, 1990 ("FY 1990") in accordance with HCFAR 97-2.  The intermediary issued

4

the NPR for FY 1990 on December 11, 1992.  <u>See</u> Compl. ¶ 28.  On May 24, 1995, plaintiff

requested a reopening of the NPR for FY 1990.  <u>See</u> Compl. ¶ 29.  The intermediary denied the

request for reopening.  <u>See</u> Compl., Ex. 1, June 4, 1997 Letter ("St. Agnes Medical Center . . .

filed an appeal from the refusal of the Blue Cross of California (the 'Intermediary') to reopen its

May 31, 1990 cost report. . .").[4]  At some point thereafter, although the date is unclear from the

parties' papers, plaintiff filed an appeal with the PRRB.  <u>See</u> Compl. ¶ 34.  On June 6, 1997, the

parties agreed to settle plaintiff's appeal.  <u>See</u> Compl. ¶ 29.  On March 31, 1998, the intermediary

notified plaintiff that plaintiff did not meet the qualifying threshold for a DSH adjustment

payment.  <u>See</u> Compl. ¶ 32.  The intermediary used the method of calculation that preceded

HCFAR 97-2 and which was less favorable to hospitals.  <u>See id</u>.  On June 24, 1999, the PRRB

dismissed plaintiff's pending appeal because it did not have jurisdiction over an intermediary's

refusal to reopen a reimbursement decision.  <u>See</u> Compl. ¶ 34; <u>see also</u> <u>Your Home Visiting</u>

<u>Nurse Services, Inc. v. Shalala</u>, 525 U.S. 449, 454 (1999).  Plaintiff filed suit in this Court on

May 3, 2006 seeking a writ of mandamus.

---

[4]        The body of the complaint alleged that the intermediary granted the request for
reopening and assigned an appeal number.  <u>See</u> Compl. ¶ 29.  As noted above, and as pointed out
by defendant, however, this allegation is contradicted by plaintiff's own exhibit.  <u>See also</u> Opp. at
2 ("the Intermediary declined to reopen its original DSH eligibility determination.").

        When resolving a motion to dismiss for lack of subject matter jurisdiction under
Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court may consider materials beyond
the pleadings.  <u>See</u> <u>Bush v. Butler</u>, 521 F. Supp. 2d 63, 67 (D.D.C. 2007) (citing <u>Herbert v. Nat'l</u>
<u>Academy of Sciences</u>, 974 F. 2d 192, 197 (D.C. Cir. 1992)).

## II.  DISCUSSION

The matter is before the Court on defendant's motion to dismiss.  Defendant argues that the Court does not have subject matter jurisdiction over plaintiff's claim because it is barred by the statute of limitations and because the complaint does not meet the legal requirements for mandamus jurisdiction.  As to whether plaintiff meets the requirements for mandamus jurisdiction, the Court recently considered virtually identical arguments in an action also seeking an order requiring that a hospital's NPR be reopened and recalculated.  See Baptist Memorial Hospital v. Johnson, 603 F. Supp. 2d 40 (D.D.C. 2009).  The complaint in this matter suffers from the same defects as did the complaint in Baptist Memorial Hospital — namely, that plaintiff has not identified a clear right to relief or a nondiscretionary duty on defendant's part, both of which are necessary to give rise to a right to mandamus.  The Court will adopt its analysis from Baptist Memorial Hospital, as explained below, and will dismiss the complaint for lack of subject matter jurisdiction in the nature of mandamus.  Accordingly, the Court need not reach the question of whether the statute of limitations has expired or any of the other bases for dismissal raised in defendant's motion.

### A.  Standard for Relief in the Nature of Mandamus

Section 1361 of Title 28 provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361. The remedy of mandamus "is a drastic one, to be invoked only in extraordinary circumstances." Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 34 (1980).  Mandamus is available only if:

6

"(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." In re Medicare Reimbursement Litig., 414 F.3d at 10 (quoting Power v. Barnhart, 292 F.3d 781, 784 (D.C. Cir. 2002)). The party seeking mandamus "has the burden of showing that 'its right to issuance of the writ is clear and indisputable.'" Northern States Power Co. v. U.S. Dep't of Energy, 128 F.3d 754, 758 (D.C. Cir. 1997) (quoting Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 289 (1988)).[5]

### B. Application of HCFAR 97-2 to Plaintiff's NPR

The courts in Monmouth and In re Medicare Reimbursement Litigation found that defendant had a nondiscretionary duty to reopen certain hospitals' NPRs because the agency's reopening regulation required reopening if the notice of inconsistency occurs "within the three year period" after the date of the determination or decision. 42 C.F.R. § 405.1885(b) (1997); see also Monmouth Med. Ctr. v. Thompson, 257 F. 3d at 814-15; In re Medicare Reimbursement Litig., 414 F.3d at 9-10. Plaintiffs in those cases contested NPRs that were all issued in the three years immediately prior to the issuance of HFCAR 97-2 on February 27, 1997. In contrast, plaintiff's NPR for FY 1990 was issued on December 11, 1992. See Compl. ¶ 28. Because the date of plaintiff's payment decision was more than three years before the notice of inconsistency in the law announced in HCFAR 97-2, nothing in 42 C.F.R. § 405.1885(b) (1997), or any other applicable law or regulation, imposed a duty on defendant or its agents, the intermediaries, to

---

[5]     A plaintiff who makes a showing of these three legal elements still will only be awarded relief in mandamus if it is equitable to provide relief. See In re Medicare Reimbursement Litig., 414 F.3d at 10 (citing 13th Regional Corp. v. U.S. Dep't of Interior, 654 F.2d 758, 760 (D.C. Cir. 1980) (relief may be provided only when there exist "compelling . . . equitable grounds")).

reopen plaintiff's NPR.  Indeed, to find that the defendant had such a duty to act would suggest

that defendant is obliged to reopen every payment decision made prior to the issuance of HCFAR

97-2 and pursuant to the now invalid regulation, no matter how old those decisions are.  Because

plaintiff's NPR was issued outside the three year window, plaintiff cannot show that it has a clear

right to relief or that defendant had a nondiscretionary duty to act.  This Court therefore lacks

mandamus jurisdiction.  See Northern States Power Co. v. U.S. Dep't of Energy, 128 F.3d at

758; see also Baptist Memorial Hospital v. Johnson, 603 F. Supp. 2d at 45.

   Plaintiff relies on the "appeal provision" in HCFAR 97-2 as a basis for finding

that the Secretary had a nondiscretionary duty to reopen plaintiff's NPR.  See Opp. at 11.  The

relevant paragraph reads:

> We will not reopen settled cost reports based on this issue.  For
> hospital cost reports that are *settled by fiscal intermediaries on or
> after the effective date of this ruling, these days may be included*.
> For hospital cost reports which have been settled prior to the
> effective date of this ruling, these days may be included.  For
> hospital cost reports which have been settled prior to the effective
> date of this ruling, *but for which the hospital has a jurisdictionally
> proper appeal pending on this issue* pursuant to either 42 C.F.R.
> § 405.1811 or 42 C.F.R. § 405.1835, *these days may be included
> for purposes of resolving the appeal.*

See HCFAR 97-2 at 4 (emphasis added).  Plaintiff argues that it had an appeal pending before the

PRRB at the time that HCFAR 97-2 was issued and that the intermediary settled its cost report

after HCFAR 97-2 was issued.  It concludes that these two facts created a nondiscretionary duty

for defendant to reopen and recalculate the NPR.  See Opp. at 11.  The Court cannot agree.

   In contrast to the decision in Monmouth that HCFAR 97-2 triggered a mandatory

duty to act under 42 C.F.R. § 405.1885(b) (1997) by treating then current DSH regulations as

8

inconsistent with the Medicare statute, see Monmouth Med. Ctr. v. Thompson, 257 F. 3d at 814,

the "appeal provision" in HCFAR 97-2 did not create any similar duty with regard to then

pending appeals or later settlements by intermediaries.  Plaintiff's arguments to the contrary are

foreclosed by the use of the word "may" in HCFAR 97-2 rather than "shall" or "must."  While

the paragraph just quoted from HCFAR 97-2 plainly *permitted* the Secretary and the Review

Board to rely on HCFAR 97-2's policy change when settling appeals pending at the time HCFAR

97-2 was issued, it does not require them to do so.  See In re Medicare Reimbursement Litig.,

309 F. Supp. 2d 89, 96-97 (D.D.C. 2004) (contrasting discretionary reopening pursuant to

regulatory use of the word "may" with mandatory reopening pursuant to use of the word "shall"),

aff'd 414 F.3d 7 (D.C. Cir. 2005); see also Your Home Visiting Nurse Servs. v. Shalala, 525 U.S.

at 457 ("The reopening regulations do not require reopening, but merely permit it: 'A

determination of an intermediary . . . may be reopened . . . by such intermediary . . . on the

motion of the provider affected by such determination.") (quoting 42 C.F.R. § 405.1885(a)

(1997)).  Without proof of a clear nondiscretionary duty on defendant's part, the Court has no

mandamus jurisdiction.  See Northern States Power Co. v. U.S. Dep't of Energy, 128 F.3d at

758; see also Baptist Memorial Hospital v. Johnson, 603 F. Supp. 2d at 45-46.

III.  CONCLUSION

For the foregoing reasons, the Court will grant defendant's motion to dismiss for lack of mandamus jurisdiction.  The case will be dismissed.  An Order consistent with this Opinion will issue this same day.

_/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: June 25, 2009